IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WENDY ASTON-MARTIN,                          :

        Plaintiff,                        :

                         Civil Action No. 4:24-cv-00043-TRM

      vs.                              :

WARNERMEDIA DIRECT, LLC,                     :

        Defendant.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Britt K. Latham
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201-3001

Michael W. McTigue Jr. (admitted *pro hac vice*)
Meredith C. Slawe (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Counsel for Defendant*
 *WarnerMedia Direct, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iv

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ..........................................................................................5

    A.    Plaintiff's Counsel, Plaintiff, and Mass Arbitration ................................5

    B.    The HBO Max and Max Service and Terms of Use ................................6

        1.    The Superseded Terms ..................................................................6

        2.    The Updated Terms .......................................................................7

    C.    Plaintiff's Counsel Send to Defendant Thousands of Near Identical Purported "Opt Outs" ...............................................................................9

    D.    Plaintiff's Counsel Submits Thousands of Near Identical "Pre-Arbitration Notices of Dispute" to Defendant ..........................................................9

    E.    Plaintiff's Counsel Seeks To Initiate Mass Arbitration Before the AAA, But the AAA Declines To Administer the Arbitrations.........................10

    F.    Plaintiff's Counsel Seeks Relief in the U.S. District Court for the Central District of California (the *Brooks* Action) ...........................................10

    G.    The *Brooks* Action Is Transferred to New York....................................11

    H.    Defendant Moves To Compel Arbitration Before NAM in the *Brooks* Action.....................................................................................................11

    I.    Plaintiff's Counsel File Four Actions in Alabama State Court..............11

    J.    Plaintiff's Counsel File This Action and Two Related Actions in Tennessee State Court While the Alabama Actions Remained Pending..............12

    K.    Defendant Removes this Action and Plaintiff Moves To Remand........13

ARGUMENT................................................................................................................13

I.    PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED ...................13

    A.    This Action Arises Under Federal Law and Is Therefore Removable.................13

B.    The Terms Plaintiff Admits Govern Her Claim Foreclose Remand to the General Sessions Court, Coffee County, Tennessee................................................14

1.    This Action Raises Issues of Arbitrability That Must Be Decided in Court in New York Under the Terms ........................................................14

2.    The Terms Permit Removal and Mandate that a Removed Action Proceed in New York.................................................................................15

3.    Plaintiff Has Not Complied with the Conditions Precedent in the Terms To File an Action in Small Claims Court ......................................17

II.    THE COURT SHOULD TRANSFER THIS ACTION  BEFORE ADDRESSING PLAINTIFF'S MOTION TO REMAND .......................................................................18

CONCLUSION.................................................................................................................19

Case 4:24-cv-00043-TRM-CHS   Document 23   Filed 06/18/24   Page 3 of 26   PageID #: 1002

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*APAC Atlantic, Inc. v. Lake Developers, II, LLC*,
No. 3:08-CV-449, 2009 WL 10709911 (E.D. Tenn. Jan. 7, 2009)...................................16

*Beautyman v. Lilyandmajor, LLC*,
No. 20-81290-CV, 2021 WL 1264228 (S.D. Fla. Feb. 1, 2021) ......................................16

*Benex LC v. First Data Merch. Services Corp.*,
No. 14-CV-6393(JS)(AKT), 2016 WL 1069657 (E.D.N.Y. Mar. 16, 2016) ...................17

*Brooks v. WarnerMedia Direct LLC*,
No. CV 23-7579-GW-MRWx, 2023 WL 10706636 (C.D. Cal. Dec. 1, 2023) ................11

*Command Components Corp. v. HWJ Engineering & Surveying, PLLC*,
189 A.D.3d 990 (N.Y. App. Div. 2020) ...........................................................................17

*Davis v. Ally Financial Inc.*,
No. CV 23-22897 (RMB-MJS), 2024 WL 2239144 (D.N.J. May 17, 2024)...................15

*Doubletree Partners, L.P. v. Land America American Title Co.*,
No. 3–08–CV–1547–O, 2008 WL 5119599 (N.D. Tex. Dec. 3, 2008)............................19

*In re Fosamax Prod. Liability Litigation*,
No. 06 MD 1789 JFK, 2013 WL 603187 (S.D.N.Y. Feb. 14, 2013)................................18

*Frawley v. Nexstar Media Group, Inc.*,
No. 1:23-CV-10384-AK, 2023 WL 6065768 (D. Mass. Sept. 18, 2023)........................14

*Gould v. National Life Insurance Co.*,
990 F. Supp. 1354 (M.D. Ala. 1998) ...............................................................................18

*Hamilton County Board of Education v. Aramark Management Services, L.P.*,
No. 1:06-CV-69, 2006 WL 8442619 (E.D. Tenn. June 16, 2006)...................................16

*ISS Facility Services, Inc. v. Fedcap Rehabilitation Services, Inc.*,
No. 20-CV-6591 (RA), 2021 WL 2784550 (S.D.N.Y. July 2, 2021)..............................17

*Jabo's Pharmacy, Inc. v. Cephalon, Inc.*,
No. 2:09-CV-289, 2010 WL 3851966 (E.D. Tenn. Sept. 27, 2010)...........................18, 19

*Kirkbride v. Antero Resources Corp.*,
No. 23-3484, 2024 WL 340782 (6th Cir. Jan. 30, 2024)..................................................17

iv

*LaSalle Group, Inc. v. Tiger Masonry, Inc.*,
No. 10-11328, 2010 WL 4167257 (E.D. Mich. Oct. 15, 2010)........................................16

*Mims v. Arrow Financial Services, LLC*,
565 U.S. 368 (2012)........................................................................................................13

*National Union Fire Insurance of Pittsburgh, PA v. Las Vegas Professional Football Ltd. Partnership*,
409 F. App'x 401 (2d Cir. 2010)....................................................................................14

*Power Marketing Direct, Inc. v. Moy*,
No. 2:08-CV-826, 2008 WL 4849289 (S.D. Ohio Nov. 6, 2008) ....................................16

*Public Employees' Retirement System of Mississippi v. Stanley*,
605 F. Supp. 2d 1073 (C.D. Cal. 2009) ..........................................................................18

*Shaw Group Inc. v. Triplefine International Corp.*,
322 F.3d 115 (2d Cir. 2003)............................................................................................15

*Travelers Casualty & Surety Co. v. Dormitory Authority-State of N.Y.*,
735 F. Supp. 2d 42 (S.D.N.Y. 2010)...............................................................................17

*Tubi, Inc. v. Keller Postman LLC*,
No. 24-cv-01616 (D.D.C. filed May 31, 2024) ............................................................5, 6

*Zampa v. JUUL Labs, Inc.*,
No. 18-25005-CIV, 2019 WL 1777730 (S.D. Fla. Apr. 23, 2019)...................................19

## STATUTES

18 U.S.C. § 2710(c)(1)...........................................................................................................14

18 U.S.C. § 2710 ....................................................................................................................1

28 U.S.C. § 1331 ..................................................................................................................13

28 U.S.C. § 1441(a) ..............................................................................................................14

28 U.S.C. § 1446(b) ................................................................................................................4

Tenn. Code § 27-5-108 .........................................................................................................13

# PRELIMINARY STATEMENT

As Defendant's motion to transfer explains, this action should be transferred to the U.S. District Court for the Southern District of New York because the very agreement Plaintiff has conceded governs her claim contains an unambiguous forum-selection clause providing that this dispute must be heard in New York. As a matter of efficiency and judicial economy, because there is already a related action pending in the U.S. District Court for the Southern District of New York (as discussed below), the motion to transfer should be decided before this motion to remand is resolved. In any event, Plaintiff's motion to remand should be denied because (i) the parties do not dispute that this Court has original jurisdiction and (ii) there is no basis for remand under the agreement Plaintiff has conceded governs her claim. To the contrary, that agreement forecloses remand.[1]

This action is part of a multi-pronged, multi-state strategy by Plaintiff's counsel Keller Postman LLC ("Keller") and Davis & Norris, LLP to improperly leverage the threat of massive arbitration fees to coerce a settlement of thousands of meritless claims.[2] More than a year ago, Plaintiff's counsel declared their intent to pursue claims under the federal Video Privacy Protection Act of 1988 ("VPPA"), 18 U.S.C. § 2710, against Defendant on behalf of their clients **in arbitration** under certain superseded HBO Max Terms of Use that were in effect prior to December 2022 (the "Superseded Terms").[3] Plaintiff's counsel then attempted to file arbitrations

---

[1]  Defendant does not waive and expressly reserves all defenses and arguments, including defenses under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[2]  Although Garth Segroves is counsel of record for Plaintiff in this action, Keller and Davis & Norris, LLP are involved here and are orchestrating the mass arbitration on behalf of many claimants including Plaintiff.

[3]  The threatened arbitration claims are almost certainly frivolous on their merits. Plaintiff's counsel allege that each claimant they represent was an HBO Max subscriber whose viewing

with the American Arbitration Association (the "AAA") on behalf of a subset of 1,030 of these claimants (not including Plaintiff).[4] The AAA declined to administer those arbitrations, and for good reason: Defendant's arbitration clause does not designate the AAA as the arbitral forum—it designates National Arbitration and Mediation ("NAM").

Plaintiff's counsel's maneuvering did not stop there. Next came a petition in the U.S. District Court for the Central District of California seeking an order mandating that Defendant register its outdated Superseded Terms with the AAA. Plaintiff's counsel filed that petition in the wrong forum: Every version of the HBO Max and Max Terms of Use (collectively, the "Terms") contains a forum-selection clause mandating that any court proceeding take place in New York.[5] Applying these Terms, the California court granted Defendant's motion to transfer the petition to the U.S. District Court for the Southern District of New York.

---

information Defendant disclosed to Facebook in violation of the VPPA. That theory is premised on an elaborate set of preconditions involving a given user's means of access to the HBO Max service and use of the Facebook social media platform. Yet counsel do not appear to have performed even a minimal level of diligence to assess whether members of the claimant pool have satisfied those preconditions such that they might be able to state a claim. Defendant's preliminary analysis reveals that an overwhelming majority of the putative claimants either do not appear to be HBO Max subscribers *at all*, or they never accessed hbomax.com on a web browser—which is just one of the essential predicates of Plaintiff's counsel's theory of liability—and thus could not possibly have a claim. For the remaining claimants—including Plaintiff—Plaintiff's counsel have not confirmed that any of the other essential preconditions have been met. Remarkably, several claimants who purportedly authorized Plaintiff's counsel to file arbitration claims with the AAA are deceased.

[4]     Plaintiff's counsel sought to apply the Superseded Terms in an attempt to take advantage of a fee structure that the AAA imposes at the outset of a "mass arbitration" filing. Plaintiff's counsel hopes to leverage the threat of those fees to extort an early settlement having nothing to do with the merits of the claims.

[5]     On May 23, 2023, Defendant launched the Max platform, which replaced HBO Max.

Plaintiff's multi-state offensive then turned to Alabama and now Tennessee. In February 2024, Plaintiff's counsel filed claim forms and one-sentence "complaints" against Defendant asserting claims in the District Court of Colbert County, Alabama, on behalf of four purported HBO Max users (not including Plaintiff).[6] After Defendant removed those cases, Plaintiff's counsel promptly voluntarily dismissed them without explanation. Now, Plaintiff's counsel has surfaced in yet another jurisdiction and forum—this time, in Tennessee.

Defendant properly removed this action. Plaintiff does not dispute that this Court has original jurisdiction because the claim asserted in the Complaint is for alleged violations of the federal VPPA. The action is therefore removable. Instead, Plaintiff argues that this action must be remanded under the Terms of Use that govern her claims. Plaintiff is wrong: Plaintiff is a user of Max and agreed to the Max Terms of Use. (Decl. ¶ 18.) Those Terms foreclose remand for at least three independent reasons:

*First*, the forum-selection clause in the Max Terms, and all other versions of the Terms, mandate that any action raising "issues involving arbitrability or enforcement" of the arbitration clause in the Terms must proceed in court in New York. This action raises issues involving arbitrability or enforcement of the arbitration clause: Plaintiff has filed the action in court and Defendant is seeking to compel arbitration under the arbitration clause, as set forth in Defendant's separate motion to compel arbitration in NAM. Accordingly, the Terms do not permit this case to be remanded to the General Sessions Court, Coffee County, Tennessee.

*Second*, the Terms expressly permit Defendant to remove an action filed in small claims court and mandate that any removed action proceed in New York. Plaintiff argues that she may

---

[6]     Plaintiff's counsel filed those cases in that court in a transparent attempt to obtain discovery outside the arbitral process.

bring her claim in Tennessee small claims court under a limited small claims court exception to arbitration in the Terms. Plaintiff is incorrect: that exception applies only "so long as the action is not removed." Because Defendant removed this action, Plaintiff can no longer proceed in small claims court in Tennessee or elsewhere.[7]

**Third**, Plaintiff has not met the conditions precedent in the Max Terms, or the HBO Max Terms in effect as of December 2022, for filing an action in small claims court (even if that exception applied to her claim, and it does not). Under these Terms, a user cannot file an action in small claims court until 60 days after submitting a compliant Notice of Dispute to Defendant. Plaintiff never provided Defendant with any Notice of Dispute, much less a compliant one. Plaintiff therefore cannot commence an action in small claims court.

Plaintiff's counsel's game of arbitral and judicial whack-a-mole must end. *See Golub Cap., LLC v. NB Alts. Advisers, LLC*, 21 CV 3991 (LJL), tr. at 68 (S.D.N.Y. Jun. 17, 2021) (Ex. 1)[8] (denying motion for preliminary injunction where plaintiff employed a "litigation strategy . . . akin to a game of 'Whac-A-Mole'"). For the foregoing reasons, Defendant requests that the Court deny Plaintiff's motion to remand.

---

[7]     A claimant may bring an arbitral claim in small claims court **only** if the action remains in the small claims court. Plaintiff filed this action in small claims court (the General Sessions Court, Coffee County, Tennessee), but she has not agreed to keep her action in that court. She initially demanded to arbitrate the claim and then, after filing this action, refused to stipulate that she would not seek relief that would exceed the jurisdiction of small claims court, seek to transfer or appeal the action from that court, or refile the action in another court. Plaintiff's refusal to agree to this stipulation was a transparent attempt to prevent Defendant from removing the action if Plaintiff took an action to cause the claims to be heard in a court of general jurisdiction (*i.e.*, contrary to the small claims court exception in the Terms) outside the 30-day removal deadline. 28 U.S.C. § 1446(b).

[8]     "Ex." citations herein refer to the Declaration of Michael W. McTigue Jr., filed herewith. "Decl." citations refer to the Declaration of Naomi Waibel, filed herewith.

4

## FACTUAL BACKGROUND

### A.    Plaintiff's Counsel, Plaintiff, and Mass Arbitration

Plaintiff's counsel are lawyers from Keller and Davis & Norris, LLP.[9] Keller has been

recognized as the firm that has "led" a "mass-arbitration avalanche."[10] The U.S. Chamber of

Commerce has described the mass arbitration tactic thus: "By simultaneously filing thousands of

arbitration demands with identical claims, plaintiffs' lawyers seek to trigger an immediate

obligation to pay millions of dollars in fees." *Mass Arbitration Shakedown* at 18. "Their goal

appears not to be to obtain simultaneous decisions on the merits—the firms filing mass

arbitrations appear to lack the resources to manage these large numbers of claims." *Id*. "Rather,

the goal appears to be to use the threat of a huge fee payment to force companies to settle the

claims *en masse*, regardless of the underlying merits." *Id.*

Keller has been sued for its efforts to weaponize the arbitration process for improper

purposes at the expense of businesses, consumers, courts, and arbitration bodies. On May 31,

2024, Keller was accused of orchestrating a "scheme to manufacture and file meritless arbitration

claims [against a business] en masse." (Ex. 2 ¶ 1 (Complaint, *Tubi, Inc. v. Keller Postman LLC*,

No. 24-cv-01616 (D.D.C. filed May 31, 2024)).) The suit alleges that Keller's objective was "to

extort a quick settlement in which Keller would benefit above all others" regardless of the merits

of the claims asserted. (*Id.* ¶ 67.) The suit further alleges that Keller's "conduct is riddled with

---

9        Plaintiff's counsel and Troxel Law LLP ("Troxel") have sent Defendant a list of putative
claimants who Plaintiff's counsel and Troxel purported to represent and on whose behalf
Plaintiffs' counsel threatened to pursue identical claims in arbitration. (Decl. ¶ 20.) That list
included Plaintiff. (*Id.* ¶ 21.) Plaintiff is also represented by the Law Office of Garth Segroves,
counsel of record for Plaintiff in this action.

10       Andrew J. Pincus et al., U.S. Chamber of Com. Inst. for Legal Reform, *Mass Arbitration
Shakedown: Coercing Unjustified Settlements* 19 (Feb. 2023) ("*Mass Arbitration Shakedown*"),
https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-
digital.pdf.

ethical violations from beginning to end" and, among other things, caused customers to breach their contractual obligations with the defendant under the arbitration agreement they were seeking to enforce to undertake an informal resolution process before pursuing claims. (*Id.* ¶ 3.) Keller's conduct was allegedly "[i]n direct opposition to the interests of [its] clients." (*Id.* ¶ 67.)

Keller routinely partners with Troxel to pursue mass arbitrations. *See id.* at 21 & 67 n.94. Troxel published social media solicitations seeking claimants in connection with Plaintiff's counsel's mass arbitration efforts here and is identified as co-counsel on pre-arbitration notices of dispute submitted on behalf of other claimants. (*See, e.g.,* Ex. 3; Decl. ¶¶ 19-20. ) Plaintiff is just one of thousands of individuals whom Plaintiff's counsel purport to represent in a "mass arbitration" against Defendant.

## B. The HBO Max and Max Service and Terms of Use

Defendant operated HBO Max, a subscription-based video-on-demand streaming platform, which Defendant subsequently replaced with its enhanced streaming platform, Max. (Decl. ¶¶ 3-4.) HBO Max customers were required to create an account to activate an HBO Max subscription. (*Id.* ¶ 5.) Plaintiff affirmatively alleges that she agreed to the HBO Max Terms of Use when she created her account. (ECF No. 1-2 at 8, 13.) Plaintiff also admits that she agreed to each successive update to the HBO Max Terms of Use and, when Defendant replaced HBO Max with Max, to the Max Terms of Use. (ECF No. 12 at 2, 5-6 (Motion To Remand).) Indeed, Plaintiff was a Max subscriber until April 1, 2024, and was required to agree to the Max Terms to use the service. (Decl. ¶¶ 14-15, 17-18.)

### 1. The Superseded Terms

The HBO Max Terms of Use in effect until December 2022, *i.e.*, the Superseded Terms, included a mandatory forum-selection clause requiring that any in-court "non-arbitral" dispute must be brought in New York:

> A dispute that is not subject to arbitration under Section 5.4 (Dispute Resolution) of these Terms shall be brought in the appropriate state or federal court located in New York County, New York; and we and you each irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts in New York County, New York for the adjudication of all non-arbitral claims.

(Ex. 4 § 5.9.) The Superseded Terms further provided that "issues relating to the scope and enforceability of the arbitration provision or whether a dispute can or must be brought in arbitration are for the court to decide." (*Id.* § 5.4(c).) Actions raising these issues must also be brought in New York under the mandatory forum-selection clause in the Superseded Terms. (*Id.* § 5.9.)

The Superseded Terms provided that "[t]o the fullest extent permitted by applicable law, HBO Max and you agree to arbitrate all disputes and claims," with narrow exceptions for certain bodily injury and intellectual property disputes not applicable to Plaintiff's claim. (Ex. 4 § 5.4(a).) The Superseded Terms designated the AAA as the forum for arbitrable disputes. (*Id.* § 5.4(c).) The arbitration clause in the Superseded Terms contained a carveout for small claims proceedings unless removed to federal court (among other conditions):

> Notwithstanding the [mandatory arbitration provisions], either party may elect to have claims heard in small claims court seeking only individualized relief, **so long as the action is not removed or appealed to a court of general jurisdiction.**

(*Id.* § 5.4(a) (emphasis added).)

## 2. The Updated Terms

On December 20, 2022, Defendant updated the HBO Max Terms of Use. (Ex. 5; Decl. ¶ 10.) Defendant provided notice of this update through (i) direct emails to all subscribers and former subscribers, including Plaintiff and (ii) pop-up notifications within the HBO Max streaming platform. (Decl. ¶¶ 10-13.) Plaintiff admits that she agreed to the updated HBO Max Terms. (ECF No. 12 at 2, 5-6 (motion to remand).) She could not dispute that she so agreed:

7

Plaintiff continued her HBO Max subscription, accessed the HBO Max application, and streamed videos after December 20, 2022. (Decl. ¶ 17.)

On May 23, 2023, Defendant replaced HBO Max with Max, an enhanced service. (Decl. ¶¶ 4, 14.) On that same date, Defendant implemented the Max Terms (together with the updated December 20, 2022, HBO Max Terms of Use, the "Updated Terms") that superseded any prior HBO Max Terms of Use with respect to all users of Max. (Ex. 6.) Plaintiff admits that she agreed to the Max Terms. (ECF No. 12 at 2, 5-6 (Motion To Remand).) Nor could she dispute that: Plaintiff was a Max subscriber until April 1, 2024. (Decl. ¶ 17.) When she first signed into the Max platform she was required to agree to the Max Terms. (*Id.* ¶¶ 14-15, 18.)

The Updated Terms, like the Superseded Terms, include a mandatory forum-selection clause requiring that any in-court "non-arbitral" dispute must be brought in New York:

> Any dispute that is not subject to arbitration under Section 5.4 (Dispute Resolution) of the Agreement, or any issues involving arbitrability or enforcement of any provisions under Section 5.4 shall be brought in the appropriate state or federal court located in **New York County, New York**; and we and you each irrevocably consent to the exclusive jurisdiction and venue of the state or federal courts in **New York County, New York** for the adjudication of all non-arbitral claims.

(Ex. 5 § 5.10; Ex. 6 § 5.10 (emphases added).) The Updated Terms further provide that "issues relating to the scope and enforceability of the Arbitration Agreement or whether a dispute can or must be brought in arbitration . . . are for a court of competent jurisdiction to decide." (*Id.* § 5.4(c).) Actions raising these issues must also be brought in New York under the mandatory forum-selection clause in the Updated Terms. (*Id.* § 5.10.) The Updated Terms also contain a New York choice of law provision, which will govern any dispute as to what Terms apply to Plaintiff's claim. (*Id.* § 5.10.)

The Updated Terms provide that "[t]o the fullest extent permitted by applicable law, HBO Max and you agree to arbitrate all disputes and claims," with narrow exceptions for certain

bodily injury and intellectual property disputes not applicable to Plaintiff's claim. (Ex. 5 § 5.4(a);

Ex. 6 § 5.4(a).) The Updated Terms designate NAM as the forum for arbitrable disputes. (*Id.*

§ 5.4(c).) The arbitration clause in the Updated Terms contains a carveout for small claims

proceedings unless removed to federal court (among other conditions):

> Notwithstanding the [mandatory arbitration provisions], either party may elect to
> have claims heard in small claims court seeking only individualized relief, **so long
> as the action is not removed or appealed to a court of general jurisdiction.**

(*Id.* § 5.4(a) (emphases added).)

### C.    Plaintiff's Counsel Send to Defendant Thousands of Near Identical Purported "Opt Outs"

Between December 23, 2022, and January 24, 2023, Plaintiff's counsel sent Defendant

thousands of substantively identical documents, each titled "Rejection of Recent Changes to

HBO Arbitration Agreements" (the "Purported Opt-Outs"). Plaintiffs' counsel sent these

Purported Opt-Outs on behalf of Plaintiff and every other individual they claim to represent,

including thousands of individuals who never subscribed to HBO Max. (Decl. ¶ 23; Ex. 7.)

Plaintiff concedes that her Purported Opt-Outs were ineffective and that she agreed to the

updated HBO Max Terms of Use and, subsequently, to the Max Terms. (ECF No. 12 at 2, 5-6.)

### D.    Plaintiff's Counsel Submits Thousands of Near Identical "Pre-Arbitration Notices of Dispute" to Defendant

Under the Updated Terms, a user who intends to initiate arbitration or a small claims

action must first send Defendant a written Notice of Dispute meeting certain requirements. (Ex.

5 § 5.4(b); Ex. 6 § 5.4(b).) A user may not initiate arbitration or small claims action until 60 days

after submitting a compliant Notice of Dispute. (*Id.*)

Between January 5, 2023, and April 14, 2023, Plaintiff's counsel sent letters to Defendant

that collectively contained thousands of substantively identical "Pre-Arbitration Notice[s] of

Dispute." (Decl. ¶ 20.) The notices of dispute alleged that Defendant violated the VPPA, and

claimed the notices of dispute were being sent pursuant to the arbitration clause in the Superseded Terms. (*See, e.g.* Ex. 3 (exemplar notice).) Based on Defendant's review of the notices of dispute and Defendant's business records, thousands of individuals on whose behalf Plaintiff's counsel sent notices of dispute never even had an HBO Max account. (Decl. ¶ 20.)

Plaintiff's counsel did not send any notice of dispute to Defendant on behalf of Plaintiff. But, on April 12, 2023, Plaintiff's counsel provided Defendant a list of claimants, including Plaintiff, on whose behalf Plaintiffs' counsel threatened to pursue identical VPPA claims in arbitration. (Decl. ¶ 21.)

**E.      Plaintiff's Counsel Seeks To Initiate Mass Arbitration Before the AAA, But the AAA Declines To Administer the Arbitrations**

On July 18, 2023, even though Plaintiff's counsel were well aware that the arbitration forum had been changed in the Updated Terms to NAM, Plaintiff's counsel attempted to file 1,030 substantively identical arbitration demands against Defendant with the AAA. (Decl. ¶ 23.) Plaintiff was not among the claimants. On August 11, 2023, the AAA informed Plaintiff's counsel that Defendant did not have an arbitration agreement registered with the AAA and declined to administer the arbitrations. (Ex. 8 at 1 (AAA Letter dated Aug. 11, 2023).)

Defendant informed Plaintiff's counsel that NAM is the arbitration administrator for all disputes relating to HBO Max. (*See, e.g.*, Ex. 9 at 1.) Defendant also advised that it was prepared to arbitrate the claims before NAM. (*Id.* at 2.) Plaintiff's counsel refused.

**F.      Plaintiff's Counsel Seeks Relief in the U.S. District Court for the Central District of California (the *Brooks* Action)**

On September 12, 2023, Plaintiff's counsel filed a petition in the U.S. District Court for the Central District of California on behalf of five claimants for whom Plaintiff's counsel had submitted arbitration demands before the AAA. (Ex. 10 (the "*Brooks* Petition").) The *Brooks*

Petition requested an order directing Defendant to "register[] its agreement with AAA and pay[] necessary fees" so that the petitioners could pursue arbitration before the AAA. (*Id.* ¶ 34.)

The *Brooks* Petition was not brought to obtain relief on behalf of just five petitioners. Plaintiff's counsel's aim is to force Defendant to register with the AAA its superseded arbitration clause, so they can file thousands of additional claims with the AAA even though the AAA is no longer designated as the arbitration administrator for Defendant and its customers.

## G. The *Brooks* Action Is Transferred to New York

On December 1, 2023, on Defendant's motion, the Central District of California issued a tentative ruling in favor of transferring the *Brooks* Action to the U.S. District Court for the Southern District of New York. *See Brooks v. WarnerMedia Direct LLC*, No. CV 23-7579-GW-MRWx, 2023 WL 10706636 (C.D. Cal. Dec. 1, 2023), *adopted*, No. CV 23-7579-GW-MRWx, 2023 WL 10705852 (C.D. Cal. Dec. 4, 2023). On December 3, 2023, the parties entered into a joint stipulation consenting to the ruling. (Ex. 11.)

## H. Defendant Moves To Compel Arbitration Before NAM in the *Brooks* Action

The parties have fully briefed cross-motions to compel arbitration in *Brooks* that are pending before Judge Failla in the U.S. District Court for the Southern District of New York, docketed as No. 1:23-cv-11030-KPF. The petitioners moved to compel arbitration before the AAA under the Superseded Terms, and Defendant moved to compel arbitration before NAM under the Updated Terms.

## I. Plaintiff's Counsel File Four Actions in Alabama State Court

On February 23, 2024, Plaintiff's counsel filed claim forms and one-sentence "complaints" against Defendant asserting VPPA claims in the District Court of Colbert County, Alabama, on behalf of four individuals who purported to be HBO Max users (the "Alabama Actions"). (Exs. 12, 13, 14, 15.) Two of these individuals had already submitted "Pre-Arbitration

Notice[s] of Dispute" to Defendant invoking arbitration "pursuant to HBO's Terms of Use." (Exs. 16, 17.) All four plaintiffs were on the list of claimants Plaintiff's counsel provided to Defendant on whose behalf Plaintiff's counsel threatened VPPA claims in arbitration. And all four plaintiffs submitted Purported Opt-Outs to Defendant acknowledging that the arbitration agreement in the HBO Terms of Use applied to their claims.

On that same date, before Plaintiff's counsel served Defendant with any papers, Plaintiff's counsel made an application to serve Defendant with interrogatories. (Ex. 18.) The Alabama court granted that request. None of the plaintiffs in the Alabama Actions informed the Alabama court that their claims are subject to a binding arbitration agreement with a New York forum-selection clause. Instead, Plaintiff's counsel sought improperly to obtain discovery outside of arbitration.

On March 18, 2024, Defendant removed the Alabama Actions. On April 15, 2024, Plaintiff's counsel filed notices of voluntary dismissal on behalf of each Plaintiff.[11]

**J.      Plaintiff's Counsel File This Action and Two Related Actions
in Tennessee State Court While the Alabama Actions Remained Pending**

On or around April 5, 2024, Plaintiff's counsel filed identical complaints against Defendant asserting VPPA claims on behalf of Plaintiff and two other individuals in the General Sessions Court, Coffee County, Tennessee. (Exs. 19, 20, 21.)

As explained above, the Terms allow small claims proceedings only so long as the claim is heard in that small claims court and "is not removed or appealed to a court of general

---

[11]      *See* Notice of Voluntary Dismissal, *Coleman v. WarnerMedia Direct, LLC*, No. 3:24-CV-00333 (N.D. Ala. Apr. 15, 2024), ECF No. 8; Notice of Voluntary Dismissal, *West v. WarnerMedia Direct, LLC*, No. 3:24-CV-00344 (N.D. Ala. Apr. 15, 2024), ECF No. 6; Notice of Voluntary Dismissal, *Parker v. WarnerMedia Direct, LLC*, No. 3:24-CV-00346 (N.D. Ala. Apr. 15, 2024), ECF No. 9; Notice of Voluntary Dismissal, *Febles v. WarnerMedia Direct, LLC*, No. 3:24-CV-00342 (N.D. Ala. Apr. 15, 2024), ECF No. 5.

jurisdiction." (Exs. 4 § 5.4(a), 5 § 5.4(a), 6 § 5.4(a).) After Plaintiff filed her action, because of all the prior jurisdictional gamesmanship, Defendant requested confirmation from each Plaintiff that—in accordance with the Terms—they would not attempt to seek additional relief outside the jurisdiction of, or transfer or appeal the action from, the General Sessions Court, Coffee County, Tennessee, or refile the action in another court.[12] Such a stipulation would have avoided the need for removal to this Court. Plaintiff and the other two plaintiffs refused to so stipulate.

## K.     Defendant Removes this Action and Plaintiff Moves To Remand

In light of the inflexible 30-day deadline for removal, on March 24, 2024, Defendant removed this and the two related actions on the ground that the plaintiffs' claims arise under federal law (*i.e.*, the VPPA). (ECF No. 1.) On June 4, 2024, Plaintiff moved to remand this action. (ECF No. 12.)

## ARGUMENT

## I.     PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED

The Court should deny Plaintiff's motion to remand because this action arises under federal law and the Terms provide no basis for remand. In fact, the Terms mandate that this action proceed in New York and preclude remand to the General Sessions Court, Coffee County, Tennessee.

## A.     This Action Arises Under Federal Law and Is Therefore Removable

Defendant properly removed this action because it arises under federal law. District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under the laws of the United

---

[12]     An appeal of a decision of the General Sessions Court, Coffee County, Tennessee, would be heard *de novo* by a court of general jurisdiction. *See* Tenn. Code Ann. § 27-5-108.

States where "federal law creates the right of action and provides the rules of decision." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012). An action over which a federal court has original jurisdiction is removable to the district court for the district and division "embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . .").

Plaintiff's only claim asserted is for alleged violations of a federal statute: the VPPA. (*See* Compl. at 7 (ECF No. 1-2.) The VPPA provides that "[a]ny person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court." 18 U.S.C. § 2710(c)(1). Because the VPPA creates the right of action and provides the rules of decision, this Court has original jurisdiction over Plaintiff's claim. *See Frawley v. Nexstar Media Grp., Inc.*, No. 1:23-CV-10384-AK, 2023 WL 6065768, at *3 (D. Mass. Sept. 18, 2023) (noting that "federal jurisdiction . . . is based on the presence of a federal question" for a claim alleging a violation of the VPPA). The action is therefore removable to this Court. (*See* ECF No. 1 ¶ 12.)

**B.     The Terms Plaintiff Admits Govern Her Claim Foreclose Remand to the General Sessions Court, Coffee County, Tennessee**

Plaintiff does not dispute that this action arises under federal law. Rather, Plaintiff argues that remand to the General Sessions Court, Coffee County, Tennessee, is required under the Terms because those terms permit her to bring her action in small claims court. Plaintiff is incorrect. In fact, the Terms mandate denial of Plaintiff's motion to remand for several independent reasons.

### 1.     This Action Raises Issues of Arbitrability That Must Be Decided in Court in New York Under the Terms

The Court cannot remand this action to the General Sessions Court, Coffee County, Tennessee, because it raises issues of arbitrability that must be resolved in court in New York

under the Terms. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Prof'l Football Ltd. P'ship*, 409 F. App'x 401, 403 (2d Cir. 2010) (summary order) (explaining that "the district court rightly concluded that the proper venue for any action involving the arbitrability of the agreement was in New York, because it is what the parties agreed to"). The Terms provide that "issues relating to the scope and enforceability of the Arbitration Agreement or whether a dispute can or must be brought in arbitration . . . are for a court of competent jurisdiction to decide." (*See supra* Background §§ B.1-2.) And any such dispute in court must be litigated "in the appropriate state or federal court located in New York County, New York." (*Id.*) Plaintiff has filed in court and Defendant has moved to compel arbitration, thus raising an issue relating to whether the dispute can or must be brought in arbitration.

> **2.      The Terms Permit Removal and Mandate that a Removed Action Proceed in New York**

The Court also cannot remand this action to the General Sessions Court, Coffee County, Tennessee, because Defendant has removed it in accordance with the Terms and any removed action must be heard in New York. Courts interpret contractual terms in accordance with "their plain meaning." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citation omitted). The Terms provide that "either party may elect to have claims heard in small claims court seeking only individualized relief, **so long as the action is not removed or appealed to a court of general jurisdiction.**" (Exs. 4 § 5.4(a), 5 § 5.4(a), 6 § 5.4(a) (emphases added).) The Terms further provide that any court action outside of small claims court must proceed in New York. (Exs. 4 § 5.9, 5, § 5.10, 6 § 5.10.)

As courts have held when construing substantively identical provisions, these terms permit removal of a small claims action and, once removed, the plaintiff no longer has the contractual right to remand to the small claims court. *See, e.g.*, *Davis v. Ally Fin. Inc.*, No. CV

23-22897 (RMB-MJS), 2024 WL 2239144, at *4 (D.N.J. May 17, 2024) (denying remand to small claims court where arbitration clause allowed small claims proceedings only "unless such action is transferred, removed, or appealed to a different court" (citation omitted)); *Beautyman v. Lilyandmajor, LLC*, No. 20-81290-CV, 2021 WL 1264228, at *6 (S.D. Fla. Feb. 1, 2021) (denying remand to small claims court where arbitration clause allowed small claims proceedings only "so long as the matter remains in such court" (citation omitted)). Plaintiff's argument that Defendant "waived" the right to remove ignores the unambiguous terms of the arbitration clause.[13]

Because Defendant has properly removed this action, the small claims exception in the arbitration clause no longer applies. Moreover, under the forum-selection clause, this action must proceed in New York. Accordingly, the action cannot be remanded to the General Sessions Court, Coffee County, Tennessee.

---

[13] In all of the cases Plaintiff cites, the parties agreed that state court was the exclusive venue for disputes. *See LaSalle Grp., Inc. v. Tiger Masonry, Inc.*, No. 10-11328, 2010 WL 4167257, at *1 (E.D. Mich. Oct. 15, 2010) (parties agreed that any "dispute may only be commenced and maintained in the Circuit Court for the County of Wayne, State of Michigan, or in the District Court for the 35th District, State of Michigan" (citation omitted)); *APAC Atl., Inc. v. Lake Devs., II, LLC*, No. 3:08-CV-449, 2009 WL 10709911, at *1 (E.D. Tenn. Jan. 7, 2009) (parties agreed that "the proper jurisdiction and venue for adjudication concerning this contract is Blount County, Tennessee, and you waive any right to jurisdiction and venue in any other place" (citation omitted)); *Power Mktg. Direct, Inc. v. Moy*, No. 2:08-CV-826, 2008 WL 4849289, at *3 (S.D. Ohio Nov. 6, 2008) (parties agreed that any action "shall be filed in the Common Pleas Court of Franklin County, Ohio" (citation omitted)); *Hamilton Cnty. Bd. of Educ. v. Aramark Mgmt. Servs., L.P.*, No. 1:06-CV-69, 2006 WL 8442619, at *1 (E.D. Tenn. June 16, 2006) (parties agreed that "[a]ny action brought in law or in equity . . . shall be filed in the appropriate state court in Hamilton County, Tennessee" (citation omitted)). Not so here.

### 3. Plaintiff Has Not Complied with the Conditions Precedent in the Terms To File an Action in Small Claims Court

The Court also cannot remand this action to the General Sessions Court, Coffee County, Tennessee, because Plaintiff has not complied with the conditions precedent to filing in small claims court under the Terms. The Updated Terms provide that a claimant who intends to initiate a small claims action must first send Defendant a written Notice of Dispute.[14] (Ex. 5 § 5.4(b); Ex. 6 § 5.4(b).) A user may not initiate arbitration until 60 days after submitting a compliant Notice of Dispute. (*Id.*) Moreover, the court may "enjoin the filing or prosecution of an arbitration" if these pre-arbitration requirements are not met. (*Id.*)

Courts strictly enforce contractual conditions precedent to filing a lawsuit and dismiss actions where the plaintiff fails to satisfy pre-suit mandates. *See, e.g.*, *Kirkbride v. Antero Res. Corp.*, No. 23-3484, 2024 WL 340782, at *4 (6th Cir. Jan. 30, 2024) (affirming dismissal where lease "required written notice 90 days before filing a lawsuit" and plaintiff "did not provide any notice at all"); *ISS Facility Servs., Inc. v. Fedcap Rehab. Servs., Inc.*, No. 20-CV-6591 (RA), 2021 WL 2784550, at *4 (S.D.N.Y. July 2, 2021) (dismissing "for failure to comply with a contractual condition precedent" where "[plaintiff] has not plausibly alleged that the parties complied with all the Subcontracts' dispute resolution provisions"); *Benex LC v. First Data Merch. Servs. Corp.*, No. 14-CV-6393(JS)(AKT), 2016 WL 1069657, at *4 (E.D.N.Y. Mar. 16, 2016) (plaintiff's "failure to comply with the Contract's notice provision . . . bars its recovery"

---

[14] The Updated Terms provide that a Notice of Dispute must set forth, among other things, (i) "how and when [the user] became a subscriber, [the user's] subscription history, and current subscription status" and (ii) "a description of the nature and basis of the claim or dispute, including any relevant facts," including "facts pertaining to your use of [the service] and the platform(s) on which you watch it (e.g., via connected TV, iPhone, desktop)." (Ex. 5 § 5.4(b); Ex. 6 § 5.4(b).) The Notice of Dispute must also include "a personally signed statement from the claimant (and not their counsel) verifying the accuracy of the contents of the Notice." (*Id.*)

because, "[a]s this Circuit has recognized, '[e]xpress conditions must be literally performed; substantial performance will not suffice'" (third alteration in original) (quoting *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 735 F. Supp. 2d 42, 73 (S.D.N.Y. 2010))); *Command Components Corp. v. HWJ Eng'g & Surveying, PLLC*, 189 A.D.3d 990, 991-92 (N.Y. App. Div. 2020) (dismissing complaint where plaintiff "failed to comply with the explicit condition precedent to suit contained in the contract," holding that a "plaintiff's failure to comply with a condition precedent to suit entitles a defendant to dismissal of the action").

Here, Plaintiff has failed to provide Defendant any written notice of dispute, let alone a Notice of Dispute that is compliant with the Terms. For this independent reason, Plaintiff's motion to remand should be denied.

## II.   THE COURT SHOULD TRANSFER THIS ACTION BEFORE ADDRESSING PLAINTIFF'S MOTION TO REMAND

Plaintiff has moved to transfer this action to the U.S. District Court for the Southern District of New York. This Court should grant Defendant's motion to transfer before addressing Plaintiff's remand motion. The federal court in New York can resolve the motion to remand, including by remanding back to Tennessee state court if that were warranted (and it is not). *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789(JFK), 2013 WL 603187, at *4 (S.D.N.Y. Feb. 14, 2013) (granting motion to remand action to Pennsylvania state court).

Courts in this District and elsewhere routinely hold that deciding "the motion[] to transfer before the motion to remand is the appropriate course to follow." *Jabo's Pharmacy, Inc. v. Cephalon, Inc.*, No. 2:09-CV-289, 2010 WL 3851966, at *1 (E.D. Tenn. Sept. 27, 2010); *see also Pub. Emps.' Ret. Sys. of Miss. v. Stanley*, 605 F. Supp. 2d 1073, 1074 (C.D. Cal. 2009) (transferring where "[d]efendants submitted a meritorious motion to transfer to the Southern District of New York" and so "[t]his Court need not address the propriety of removal before

ruling on the motion to transfer"); *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1363 (M.D. Ala. 1998) (granting motion to transfer and motion to stay the decision to remand pending transfer, observing that "[c]ontrary to the insistence of the Plaintiff, deciding the issue of remand first would not necessarily 'save a step' or otherwise save expenses").

Granting a motion to transfer before addressing a motion for remand is uniquely warranted where, as here, "a related suit is already pending in the transferee district." *Jabo's Pharmacy*, 2010 WL 3851966, at *1 (quoting *Doubletree Partners, L.P. v. Land Am. Am. Title Co.*, No. 3-08-CV-1547-O, 2008 WL 5119599, at *2 (N.D. Tex. Dec. 3, 2008)); *see also Zampa v. JUUL Labs, Inc.*, No. 18-25005-CIV, 2019 WL 1777730, at *4 (S.D. Fla. Apr. 23, 2019) (explaining that "courts have generally decided motions to transfer in the first instance when there is another court that is already familiar with the issues to 'ensure the efficient use of judicial resources.'" (citation omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand to the General Sessions Court, Coffee County, Tennessee, should be denied.

Dated: June 18, 2024                      Respectfully submitted,

*/s/ Britt K. Latham*
Britt K. Latham (023149)
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201-3001

Michael W. McTigue Jr. (admitted *pro hac vice*)
Meredith C. Slawe (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Tel: (212) 735-3546
Fax: (212) 735-2000
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Counsel for Defendant*
  *WarnerMedia Direct, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on the

following counsel via the Court's CM/ECF notification system on this 18th day of June, 2024:

Garth R Seagroves
Ray Jackson & Lane
111 North Atlantic Street
P.O. Box 1027
Tullahoma, TN 37388

Garth R Segroves
Law Office of Garth Segroves
113 West Moore Street
Tullahoma, TN 37388

/s/ Britt K. Latham
Britt K. Latham