IN THE UNITED STATES DISTRICT COURT
FOR THE EASSTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| WENDY ASTON-MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:24-cv-00043-TRM |
| ) | |
| WARNERMEDIA DIRECT, LLC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO COMPEL ARBITRATION**

In its Motion to Compel Arbitration, WarnerMedia wastes a great deal of time and space discussing multiple cases and parties that are not before this Court. In doing so, it entirely loses sight of what it is trying to accomplish and what the law requires. A federal district court's power to compel arbitration stems entirely from Section 4 of the Federal Arbitration Act, which authorizes a district court to act only when a party has been "aggrieved *by the alleged failure, neglect, or refusal of another to arbitrate*" 9 U.S.C. § 4.

This language makes it clear that WarnerMedia does not have standing under Section 4. Defendant's motion to compel arbitration fails on the very first step—it does not even attempt to argue that the company has been "aggrieved by the alleged failure, neglect, or refusal" of Wendy Aston-Martin to arbitrate. Instead, WarnerMedia acknowledges that she filed this case in small claims court as every

1

potentially applicable version of the parties' agreement allows her to do. Incongruously, it then argues that either *its choice* to remove the action, or the actions of parties and counsel not before this Court, somehow constitute a failure or refusal to arbitrate by Ms. Aston-Martin. That makes no sense. Thus, the entire basis of WarnerMedia's motion to compel arbitration is illogical and contrary to law.

This Court lacks the power to compel arbitration in this case for two reasons, each of which independently requires the motion to compel arbitration to be denied. *First*, this case belongs in the General Sessions Court of Coffey County, Tennessee as Plaintiff fully explains in her motion to remand. Because WarnerMedia waived the right to remove in every version of the contract, this court cannot decide the motion to compel arbitration (or the motion to transfer venue). *Second*, the court cannot compel arbitration where the opposing party has not refused to arbitrate. Far from refusing to abide by the arbitration agreement, Wendy Aston-Martin has done only what all the potentially applicable agreements allow her to do—file in small claims court—as WarnerMedia concedes. Thus, all of WarnerMedia's bloviating about which terms apply—including its absolutely false assertion that Plaintiff somehow conceded that the most recent terms apply simply by citing the fact that *all* of the terms contain a small claims exception—is entirely irrelevant. No refusal to arbitrate has occurred here, and there is no basis for this court to compel arbitration. This Court should deny WarnerMedia's motion to compel.

2

### A. This Case Should Be Remanded Because WarnerMedia Waived its Right to Remove.

The potentially applicable contracts between the parties, each written by WarnerMedia, all give consumers like Plaintiff the right to proceed in small claims court. As Plaintiff explained in her reply in support of the motion to remand (Doc. 26), the contract's promise that Ms. Aston-Martin could proceed in small claims court so long as the case remained there must be interpreted to require the company to allow the case to proceed in small claims court, because any other reading fails to give effect to the promise to allow the claim to be brought in small claims court and renders the promise illusory. See, e.g., Cagle v. Cagle, 1998 WL 802019 at *5 (Tenn. Ct. App. 1998) ("All words and phrases placed in a contract shall be given effect whenever possible"); M & G Polymers USA, LLC v. Tackett, 574 U.S. 427, 440 (2015) ("[The illusory promises] doctrine instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." (citing 3 Williston § 7:7 (4th ed. 2008)).

When WarnerMedia made this promise to Ms. Aston-Martin, it waived its right to remove the case, again as Plaintiff as explained in her motion to remand and reply. (Docs 16, 26). See Hamilton County Bd. of Educ. v. Aramark Mgmt. Servs., L.P., 2006 WL 8442619 at *1 (E.D. Ten. 2006). Thus, this court should grant the motion to remand without reaching any of the other motions before it. Courts in the Sixth Circuit regularly hold that when a motion to remand is due to be granted, the

3

District Court should not address other aspects of the parties' dispute. See, e.g., Concord Telephone Exchange, Inc. v. Halo Wireless, Inc., 2011 WL 5325572 at *2 (M.D. Tenn. 2011); Lee v. Trace3, LLC, 2021 WL 9629077 at *1-2 (W.D. Ky. 2021).

### B. No Basis Exists for the Court to Compel Arbitration, Because Ms. Aston-Martin Has Not Failed, Neglected, or Refused to Arbitrate.

As noted above, the Federal Arbitration Act empowers a court to compel arbitration only where a party has been "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration…" 9 U.S.C. § 4. To enter an order under Section 4 of the FAA, the court must first find that Wendy Aston-Martin refused to arbitrate pursuant to some agreement. This cannot be done, because all of the potentially applicable agreements allow her to file in small claims court. In other words, WarnerMedia cannot point to anything that Plaintiff did that was not expressly authorized by every potentially applicable agreement. Each agreement gave Plaintiff a choice, to file in small claims court or in arbitration. The agreements also require that, whether in arbitration or in small claims court, the consumer pursues relief on an individual basis. WarnerMedia, which wrote and imposed the contract, thus required that each customer make that choice individually. That other WarnerMedia customers may choose arbitration does not bind Plaintiff in any way. Ms. Aston-Martin retained the right to choose small claims court, and she acted pursuant to every potentially applicable contract when

4

she did so. Therefore, her choice to file in small claims court cannot be considered a failure, neglect, or refusal to arbitrate.

WarnerMedia makes no argument in its motion that Ms. Aston-Martin did anything herself that violated the contract or constituted a refusal to arbitrate. In fact, despite its long list of grievances against Plaintiff's counsel, it also fails to explain in any significant detail why any of those actions constitute a refusal to arbitrate anyway, but even if it did, none of her counsel's actions in representing other clients should be imputed to Ms. Aston-Martin or have any effect whatsoever on her right to have this claim heard in small claims court. Instead of something Plaintiff or her counsel did, WarnerMedia claims it has the right to compel arbitration based on ***its own actions*** in removing the case. According to the company, "[b]ecause Defendant removed this action, Plaintiff can no longer proceed in small claims court in Tennessee or elsewhere." (Doc. 20 at 7). Once again, WarnerMedia does not explain how its actions in removing the case somehow mean that it is "aggrieved by the alleged failure, neglect, or refusal *of another* to arbitrate." 9 U.S.C. § 4 (emphasis supplied).

The United States Supreme Court has stated that "[a]n indispensable element of [a party's] cause of action under § 4 for an arbitration order is the [other party's] refusal to arbitrate. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983). The same is true for a motion to compel arbitration—the motion

5

must be denied if there was no refusal to arbitrate by the opposing party. Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F. 4th 144, 162 (2d Cir. 2021) (affirming denial of motion to compel arbitration where the other party did not refuse to arbitrate.) In a case that concerned the National Labor Relations Act's six-month statute of limitations after a refusal to arbitrate, the Sixth Circuit held that such a refusal must be unequivocal to support a motion to compel arbitration and begin the clock on the statute. International Union v. Cummins, Inc., 434 F.3d 478, 484 (6th Cir. 2006) (citing Aluminum Brick and Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1548 (11th Cir. 1993) (holding that company's statements that "I'm sure you will agree that the matter is closed" and "I … would be interested to see what the Union's position is" were not unequivocal refusals to arbitrate.) Other courts around the country have also addressed the issue. For example, the Third Circuit held that if a party tries to compel arbitration before the adverse party has refuse to arbitrate, "it is doubtful that such a petition… would present an Article III court with a justiciable case or controversy." ACE American Ins. Co. v. Guerriero, 738 Fed. Appx. 72, 76 (3d Cir. 2018) (citing PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1067 (3d Cir. 1995)).

    This case bears a strong resemblance to Transatlantic Lines LLC v. Amergent Techs, LLC, decided by the District of Connecticut in 2016. 186 F. Supp. 3d 223, 225 (D. Conn. 2016). In Transatlantic, the parties apparently had a dispute over the

6

correct arbitral forum, but Amergent, the respondent, had already begun arbitration that was authorized by the contract. The Transatlantic court explicitly built its analysis on the arguments Plaintiff makes here, that there must be an active refusal to arbitrate to trigger the court's power to compel:

> Transatlantic's contention that the FAA "does not specifically require that a 'refusal' to arbitrate be a prerequisite to a petition to compel arbitration, but rather broadly empowers the Court to provide relief whenever there is any form of an impediment to arbitration" is not persuasive.

Id. at 227. The court further stated that "unless the respondent has resisted arbitration, the petitioner has not been aggrieved by anything and there is nothing for the court to compel." Id. at 226 (quoting SH Tankers Ltd. v. Koch Shipping Inc., 2012 WL 2357314 at *3 (S.D.N.Y. 2012)). The Transatlantic court ultimately determined that the petition to compel arbitration must be dismissed because "Amergent's attempt to arbitrate in California was not contrary to the parties' agreement. Because Amergent never refused to arbitrate … the court cannot find that there was a refusal to arbitrate on Amergent's part." Id. at 227. Likewise, in this case Ms. Aston-Martin's initiation of the small claims court case in the General Sessions Court of her home county was "not contrary to the parties' agreement," and, in fact, was explicitly authorized by that agreement. There is no basis for this Court to compel arbitration.

Furthermore, the Supreme Court has also made it clear that the FAA requires courts compelling arbitration "to enforce agreements to arbitrate according to their terms." CompuCredit Corp v. Greenwood, 565 U.S. 95, 98 (2012) (citing Dean Witter Reynolds, Inc. v Byrd, 470 U.S. 213, 221 (1985)). Here, it is undisputed that every conceivable agreement between the parties includes in its terms the right for the consumer to file the case in small claims court. Even WarnerMedia concedes that it is not a breach of the agreement for Ms. Aston-Martin to do so. Given that the only power this court has regarding arbitration is to compel the parties to follow the terms of the agreement, there is nothing for the court to compel in this case. Not only did Ms. Aston-Martin follow the terms of the agreement when she filed in small claims court, if this court compelled arbitration "according to" those same terms, she would be well within her rights to file in small claims court again.

Because WarnerMedia cannot show that it is a party aggrieved by Wendy Aston-Martin's refusal to follow the agreement, it cannot succeed on its motion to compel arbitration. This Court must deny that motion.

### C. Even if the Court Could Compel Arbitration, it Could Not Do So Under the New Terms, Which Ms. Aston-Martin Properly Opted Out Of.

WarnerMedia argues that the most recent version of its terms must apply, and, baselessly, that Plaintiff somehow "conceded" that these terms apply simply by citing all the sets of terms in her remand motion to demonstrate their uniformity with respect to the small claims court provision. It should be clear to the court that no

8

such concession has been made. Furthermore, the final set of terms that WarnerMedia wants to apply cannot be enforced against Ms. Aston-Martin because she validly opted out of them.

A year and a half ago, a class action was filed alleging the same claims that Plaintiff brought in small claims court. See McDaniel v. Home Box Off., Inc., No. 22-CV-1942 (VEC), 2023 WL 1069849 at *1 (S.D.N.Y. Jan. 27, 2023). There is no Plaintiff was a putative member of this class, which WarnerMedia successfully compelled to arbitration in the American Arbitration Association ("AAA"). Furthermore, the terms under which WarnerMedia compelled arbitration contained the following provision with respect to "Future Changes to Arbitration Provision:"

> **(g) Future Changes to Arbitration Provision:** Notwithstanding any provision in this agreement to the contrary, we agree that if we make any future change to this arbitration provision (other than a change to the Notice Address), you may reject any such change by sending us written notice within 30 days of the change to the arbitration Notice Address provided above. By rejecting any future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this provision.

(Doc. 24-4 at 41).

Warnermedia successfully compelled the McDaniel case to AAA arbitration, with the court granting the motion to compel on January 27, 2023. After this motion was granted, numerous customers of WarnerMedia attempted to file arbitrations with the AAA. These WarnerMedia customers, like Wendy Aston-Martin, had sent WarnerMedia the notice required in paragraph 5.4(g) above—WarnerMedia even

9

filed this notice, sent just three days after the terms were changed, in this case. (Doc. 24-7 at 2). WarnerMedia argues that the opt-out is not effective, but the only reason it gives is that it received so many of them from Plaintiff's counsel. There is absolutely no reason this should matter in Plaintiff's individual case. The notice complies with what the section above required, and WarnerMedia simply cannot prove that Wendy Aston-Martin ever agreed to arbitrate under the new terms.

It should also be noted that the Sixth Circuit has disfavored attempts to change arbitration agreements after a party learned of a dispute. In <u>Russell v. CitiGroup, Inc.</u>, the Court of Appeals concluded that a changed agreement did not apply to past disputes, emphasizing the fact that the company communicated the change directly to the Plaintiff rather than to his counsel. 748 F. 3d 677, 680 (6th Cir. 2014). Thus, far from being somehow indicative of foul play or that Plaintiff somehow did not properly opt out, communication through counsel is actually the proper channel when a company that knows that a large number of its customers are suing it tries to change the arbitration agreement mid-stream. The Sixth Circuit likewise found that a change in an arbitration agreement was invalid in a 2021 case that arose in this district. <u>See</u> <u>Sevier County Schools Federal Credit Union v. Branch Banking & Trust Co.</u>, 990 F. 3d 470, 476 (6th Cir. 2021). In <u>Sevier County</u>, the Court of Appeals held that "[b]ecause there was no mutual assent the 2001 BSA and its subsequent amendments are invalid to the extent that they materially changed the terms of the

original agreement. (Id.) This was true even though the case was not brought until many years after the terms were changed. Id. at 477 (noting that "Plaintiffs never objected over the course of almost two decades, to the arbitration provision.").

Here, of course, Ms. Aston-Martin immediately opted out of the new terms. They cannot be enforced against her, and this court cannot compel arbitration under them, both for the reasons described in parts A and B, and because she never agreed to arbitrate under the new terms. This Court should deny WarnerMedia's motion. If this Court nevertheless compels arbitration, it should compel WarnerMedia to arbitrate in the AAA.

Respectfully submitted, this 2d day of July 2024,

_____
Garth R. Segroves (BPR 023358
113 West Moore Street
Tullahoma, Tennessee 37388
Telephone: (931) 393-4366
Facsimile: (931) 259-4466
Email: garth_segroves@att.net

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record through the CM/ECF electronic filing system of the United States District Court for the Eastern District of Tennessee on the 2nd day of July, 2024.

_____
Garth R. Segroves

11

Case 4:24-cv-00043-TRM-CHS   Document 27   Filed 07/02/24   Page 11 of 11   PageID #: 1497